UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA,      . Civil No. 09-00175-SJF-1
.
        Vs.              .
. 100 Federal Plaza
. Central Islip, NY
FERNANDO PABON,           .
et al.,                 .
. APRIL 10, 2009
. . . . . . . . . . . . . . . . .


TRANSCRIPT OF ARRAIGNMENT AND PLEA CONFERENCE
BEFORE HONORABLE A. KATHLEEN TOMLINSON
UNITED STATES DISTRICT JUDGE


APPEARANCES:


For The United States         CHARLES PETER KELLY, ESQ.
United States Attorneys Office
824 Federal Plaza
Central Islip, NY 11722


For The Defendant:            TINARI O'CONNELL OSBORN & KAUFMAN
By: PATRICK M. O'CONNELL, ESQ.
320 Carlton Avenue
Central Islip, NY 11722


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**TERRY GRIBBEN'S TRANSCRIPTION SERVICE**
**27 Beach Road, Unit 4**
**Monmouth Beach, NJ  07750**

(732) 263-0044    Fax No. 732-263-0075

3

I N D E X

PAGE

ARRAIGNMENT                                    4


WITNESS                COURT

FERNANDO PABON          10

1        THE CLERK:  For arraignment and guilty plea, United

2   States of America against Fernando Pabon under criminal Docket

3   09-175.  Counsel appearances.

4        MR. KELLY:  For the government, Assistant U.S.

5   Charles P. Kelly and with Special Agent from the IRS Edward

6   Meehan.  Good afternoon Your Honor.

7        MR. O'CONNELL:  Good afternoon Your Honor Patrick L.

8   O'Connell, Tinari, O'Connell, Osborn and Kaufman, 320 Carlton

9   Avenue, Central Islip for Fernando Pabon who is seated next to

10  me with the interpreter Mya Grey.

11       THE COURT:  All right.  We've already sworn in Ms.

12  Grey as interpreter and that obviously remains in effect for

13  this proceeding.

14       I have before me a waiver of indictment that was

15  signed by Mr. Pabon and also by Mr. O'Connell as his counsel.

16  The record will so reflect that.

17       I have an order of referral from Judge Feuerstein

18  stating that the defendant has consented to have his plea taken

19  before me and I'm directed to administer the aloculation here

20  and make a finding as to whether the plea is knowingly and

21  voluntarily made and not coerced.  And a recommendation as to

22  whether the plea of guilty should be accepted.

23       That consent form also appears to have been executed

24  by the defendant, Fernando Pabon and his counsel Mr. O'Connell.

25  And I want to confirm for the record verbally from Mr. Pabon

1 that he is agreeing to having his plea entered before me.

2             INTERPRETER MYA GREY PREVIOUSLY SWORN

3             MR. PABON: I accept.

4             THE COURT: All right.  Before we proceed further, I

5 do want to inquire into the issue of Mr. Fernando Pabon's

6 representation here.

7             Mr. Pabon you, I believe, sat through the proceedings

8 immediately prior to this one in which we went through the

9 arraignment of your brother Juan Carlos and also the entering

10 of his plea, correct?

11            MR. F. PABON:  Yes.

12            THE COURT:  All right.  And you heard what went on

13 during the course of those proceedings, correct?

14            MR. F. PABON: Yes.

15            THE COURT:  And did you understand what you heard?

16            MR. F. PABON:  Yes.

17            THE COURT:  Now, Mr. Pabon you are being represented

18 here today by Mr. O'Connell.  And the Court needs to insure

19 that you understand you have a right to your own independent

20 counsel separate and apart from counsel who may be representing

21 your brothers in this matter.  Do you understand that?

22            MR. F. PABON:  Yes.

23            THE COURT:  And so you have the right to have someone

24 of your own choosing other than Mr. O'Connell represent you

25 here if you chose to do so.  Do you understand that?

1          MR. F. PABON:  Yes.

2          THE COURT:  And that one of the concerns the Court

3  has on your behalf is this issue of a conflict of interest

4  that's potentially created by virtue of the fact that each of

5  your brothers and you are being represented by the same

6  attorney.  Do you understand that?

7          MR. F. PABON:  Yes.

8          THE COURT:  Which is why we're attempting to insure

9  that you understand you have the right to your own counsel.

10 You understand?

11         MR. F. PABON:  Yes.

12         THE COURT:  Having worked through this case to this

13 point and I know that you had prior counsel here before Mr.

14 O'Connell took over this case, is it your desire to waive any

15 conflict of interest here and to retain Mr. O'Connell as your

16 counsel?

17         MR. F. PABON:  Yes.

18         THE COURT:  All right.  And are you agreeing to waive

19 any conflict of interest freely and voluntarily of your own

20 free will?

21         MR. F. PABON:  Yes.

22         THE COURT:  All right.  Is there anything further you

23 wish to put on the record Mr. O'Connell?

24 DIRECT EXAMINATION BY MR. O'CONNELL:

25 Q    Mr. Pabon, you were previously represented by Mr. Garguilo

Colloquy                                              7

1  regarding this matter.

2  A    Yes.

3  Q    And he represented both you and your two brothers, Juan

4  Carlos and Eduardo?

5  A    Yes.

6  Q    And the three of you signed the plea agreements back in

7  December of 2008 regarding this matter?

8  A    Yes.

9  Q    And when Mr. Garguilo became a New York State Supreme

10 Court justice he referred you to me and you wanted me to

11 represent all three of you?

12 A    Yes.

13 Q    And we discussed this possible conflict of interest before

14 with yourself and in the presence of your brothers, correct?

15 A    Yes.

16 Q    And you still want me to represent you in this matter,

17 correct?

18 A    Yes.

19 Q    Thank you.

20            MR. O'CONNELL:  Nothing other than that.

21            THE COURT:  Mr. Kelly anything further?

22            MR. KELLY:  No, Your Honor.  Thank you.

23            THE COURT:  All right.  Although the issue of the

24 same attorney representing all codefendants; well, they're not

25 really codefendants because these are three separate matters

Colloquy                                8

1  although they certainly arise from the same set of

2  circumstances and charges.

3          Nonetheless, having questioned Fernando Pabon on the

4  record, I find that his agreement to waive any conflict here is

5  knowingly entered into and voluntarily consented to and we will

6  proceed from that basis.

7          Proceed first with the arraignment.

8          MR. O'CONNELL: I acknowledge receipt of the

9  information under Docket 09-CR-00157.

10          MR. KELLY: 175.

11          MR. O'CONNELL: Yes, 175.  And I've discussed it and

12  reviewed it with my client who's authorized me to enter a

13  preliminary not guilty plea.  We also waive a preliminary

14  hearing.

15          THE COURT: All right.  The record will reflect that

16  Fernando Pabon is waiving his right to a preliminary hearing.

17          Fernando Pabon, the purpose of this proceeding is to

18  make sure you understand what crimes you're charged with, to

19  make sure you understand you have a right to be represented by

20  an attorney and to address the question of whether you should

21  be released on bail or held in jail.

22          You are not required to make any statement here.  And

23  I must caution you that any statement that you do make except

24  to your attorney can be used against you.  Do you understand

25  that?

Colloquy                                    9

1          MR. F. PABON:  Yes.

2          THE COURT:  Mr. Fernando Pabon have you had an

3  opportunity to see the information and the three charges that

4  have been filed against you?

5          MR. PABON:  Yes.

6          THE COURT:  And have you reviewed that information

7  with your counsel, Mr. O'Connell?

8          MR. F. PABON: Yes.

9          THE COURT:  Do you understand that you have been

10 charged with three counts in this information; the first count

11 specifically charging you with conspiracy to defraud the United

12 States and specifically by under reporting wages earned by

13 employees of the three restaurants involved here.  And failing

14 to payroll taxes on those under reported wages.  And that you

15 did this in an agreement with yourself and your two brothers by

16 paying the employees in cash in addition to, as part of their

17 salary.

18          And further causing false form 941s for the three

19 restaurants to be filed with the IRS, knowing that they failed

20 to disclose the untaxed wages.  That's count number 1.  Do you

21 understand that?

22          MR. F. PABON: Yes.

23          THE COURT:  And in count number 2 you are charged

24 with filing a false and fraudulent income tax return for

25 calendar year 2006.  The count is actually for tax evasion.

Colloquy                                   10

1    And for you filing a return that provides a false

2    representation of your income for 2006 and a false statement

3    with regard to the amount of tax owing on your compensation for

4    that year.  That's charge number 2.  Do you understand that?

5              MR. F. PABON:  Yes.

6              THE COURT:  And charge number 3 indicates that

7    together with your brothers you knowingly and intentionally

8    hired illegal aliens to work for you here in the United States

9    knowingly full well that these aliens were not authorized to

10   work in the United States.  Do you understand that that's count

11   3 against you?

12             MR. F. PABON:  Yes.

13             THE COURT:  All right.  Mr. O'Connell you've stated

14   that you had a chance to review the complaint with Fernando

15   Pabon.  Have you advised him of his constitutional right to

16   these proceedings?

17             MR. O'CONNELL: Yes, I have Your Honor.

18             THE COURT: All right.  I'm going to defer the issue

19   of detention or bail until we conclude the taking of the plea.

20             Fernando Pabon before accepting your plea, there are

21   a number of questions that I must ask you to insure that it is

22   a valid plea.  If you do not understand any of my questions

23   please say so and I will attempt to reword the question in a

24   manner that you can answer it.  Do you understand that?

25             MR. F. PABON:  Yes.

1            THE COURT: All right.

2            THE CLERK: Madam Clerk will you please swear in the

3  defendant.

4                  DEFENDANT, FERNANDO PABON, SWORN

5  EXAMINATION BY THE COURT:

6  Q    Fernando Pabon, do you understand that having now been

7  sworn your answers to my questions will be subject to the

8  penalties of perjury or of making a false statement if you do

9  not answer them truthfully?

10 A    Yes.

11 Q    What is your full name sir?

12 A    Fernando Pabon.

13 Q    And how old are you?

14 A    57.

15 Q    What is the highest level of schooling or education you

16 have completed?

17 A    University.

18 Q    All right.  Mr. Pabon are you presently or have you

19 recently been under the care of a physician or a psychiatrist?

20 A    No.

21 Q    In the past 24 hours have you taken any narcotic drugs,

22 medicine or pills or drunk any alcoholic beverage?

23 A    No.

24 Q    Have you been hospitalized ever or treated for narcotics

25 addiction?

F. Pabon-Court                          12

1    A      No.

2    Q      Is your mind clear as you sit here this afternoon?

3    A      Yes.

4    Q      Do you understand what's going on here in these

5    proceedings today?

6    A      Yes.

7            THE COURT:  Mr. O'Connell have you discussed this

8    matter with Fernando Pabon?

9            MR. O'CONNELL:  Yes, Your Honor.

10           THE COURT:  And does he understand the rights that he

11   would be waiving by pleading guilty here?

12           MR. O'CONNELL:  Yes, Your Honor.

13           THE COURT:  To the best of your knowledge Mr.

14   O'Connell is Fernando Pabon capable of understanding the nature

15   of these proceedings?

16           MR. O'CONNELL: Yes, Your Honor.

17           THE COURT: And do you have any doubt as to Fernando

18   Pabon's competency to plead at this time?

19           MR. O'CONNELL: No, Your Honor.

20   BY THE COURT:

21   Q      Mr. Pabon you have a right to plead not guilty.  Do you

22   understand that?

23   A      Yes.

24   Q      If you plead not guilty, under the Constitution and laws

25   of the United States you are entitled to a speedy and public

1 trial by jury with the assistance of counsel on these charges.

2 Do you understand that?

3 A    Yes.

4 Q    At the trial you would be presumed to be innocent and the

5 government would have to overcome that presumption and prove

6 you guilty by competent evidence and beyond a reasonable doubt.

7 And you would not have to prove that you were innocent.  And if

8 the government failed, the jury would have the duty to find you

9 not guilty.  Do you understand that?

10 A    Yes.

11 Q    In the course of the trial, the witnesses for the

12 government have to come to Court and testify in your presence.

13 And your counsel has the right to cross examine those witnesses

14 for the government, to object to evidence offered by the

15 government and to offer evidence on your behalf.  Do you

16 understand that?

17 A    Yes.

18 Q    At the trial while you would have the right to testify if

19 you chose to do so, you would not be required to testify.

20 Under the Constitution of the United States you cannot be

21 compelled to incriminate yourself.  If you decided not to

22 testify the Court would instruct the jury that they could not

23 hold that against you.  Do you understand that?

24 A    Yes.

25 Q    If you plead guilty and if I recommend to Judge Feuerstein

1  that she accept the plea, you will be giving up your

2  constitutional rights to a trial and the other rights that I've

3  just discussed with you.  There will be no further trial of any

4  kind and no right to appeal or collaterally attack or at any

5  time question whether you are guilty or not.

6       A judgment of guilty will be entered on the basis of your

7  guilty plea, which judgment can never be challenged.  However,

8  you have the right to appeal with respect to the taking of this

9  plea and the sentence.  Do you understand that?

10 A    Yes.

11 Q    If you plead guilty, I will have to ask you questions

12 about what you did in order to satisfy myself that you are

13 guilty of the charges to which you seek to plead guilty.  And

14 you will have to answer my questions and acknowledge your

15 guilt.  Therefore you'll be giving up your right not to

16 incriminate yourself.  Do you understand that?

17 A    Yes.

18 Q    Fernando Pabon, are you willing to give up your right to a

19 trial and the other rights that I've just discussed with you?

20 A    Yes.

21            THE COURT:  I've been handed up what we have marked

22 as Court Exhibit 1 which is the plea agreement, labeled the

23 plea agreement between the United States government and

24 Fernando Pabon.

25 Q    Mr. Pabon you have seen this plea agreement, is that

1  correct?

2  A    Yes.

3  Q    And you've reviewed it and you understand it?

4  A    Yes.

5  Q    And on page 10 here I see your signature along with your

6  then counsel Mr. Garjulo, correct?

7  A    Yes.

8  Q    All right.  And you recognize that this is the only

9  agreement that you have with the government with respect to

10 these proceedings, is that correct?

11 A    Yes.

12 Q    All right.

13      THE COURT:  Mr. Kelly I'll ask you now if you would

14 please to list whether there is a waiver of appeal or waiver of

15 any other rights included in the plea agreement.

16      MR. KELLY:  Yes, Your Honor, there is a waiver of a

17 right to appeal or otherwise challenge by 2255 petitioner any

18 other petition, the conviction or the sentence should Judge

19 Feuerstein impose a term of imprisonment of 41 months or below.

20      THE COURT:  All right.

21 Q    Mr. Pabon you have just heard the Prosecutor state the

22 waivers that are contained in this plea agreement.  Did you

23 hear those?

24 A    Yes.

25 Q    And you understand them?

F. Pabon-Court                    16

1  A    Yes.

2  Q    And specifically you understand that if Judge Feuerstein

3  sentences you to a term of imprisonment of 41 months or less,

4  you are giving up your right to appeal the sentence.  Do you

5  understand that?

6  A    Yes.

7            THE COURT:  All right.  Mr. Kelly if you would, I'll

8  ask you to fill in the elements of each of the crimes charged

9  here in the information.

10           MR. KELLY:  Yes, Your Honor.  There are three crimes

11 charged in the information.  The first is a conspiracy count, a

12 conspiracy to defraud the United States.  And the elements are

13 that there was an agreement.  And here the government would

14 show there was an agreement between the defendant Fernando

15 Pabon and his brothers, Juan Carlos and Eduardo to operate the

16 Mi Tierrita restaurants in Hempstead, New York, Brentwood, New

17 York and Patoque, New York with a cash payroll and under report

18 the wages of the employees of the restaurants.  And the purpose

19 of this was to evade the payment of payroll taxes.

20           And that is what the brothers did in operating these

21 restaurants and specifically in filing false form 941s,

22 Fernando Pabon and others did that for the Finitia Restaurant

23 Corporation in 2006 when they reported for the quarter, April

24 1st to June 30th, 2006, $68,363 in wages when in fact they

25 knew, Fernando Pabon knew that the total wages that should have

F. Pabon-Court                                    17

1  been reported and had payroll taxes on them was $211,854.  So

2  there was an agreement to defraud the IRS and it was carried

3  out by under reporting wages.

4          Count 2 is an income tax evasion count, personal,

5  federal income tax.  And in that Fernando Pabon for the year

6  2006 reported his income as approximately 41,000 when in fact

7  he knew that his income was approximately $304,000.  And he did

8  this on the form 1040 as a resident of Holtsville, New York and

9  filed that with the IRS in an attempt to evade income tax that

10 was due and owing.

11         Count 3, unlawful employment of aliens, defendant

12 Fernando Pabon with his brothers, Juan Carlos and Eduardo,

13 knowingly and intentionally hired those who were not authorized

14 to work here.  The elements of that crime are that they did

15 that knowingly and that they engaged in a pattern and practice

16 of such hiring.  Thank you Judge.

17         THE COURT: All right.

18 BY THE COURT:

19 Q    Fernando Pabon you have just heard the elements of the

20 crimes with which you are charged recited by the Prosecutor,

21 Mr. Kelly.  Do you understand those elements of each of those

22 counts?

23 A    Yes.

24 Q    And have you discussed with Mr. O'Connell the three

25 charges in the information to which you intend to plead guilty

1   here today?

2   A    Yes.

3   Q    Do you understand each of those three charges as they are

4   stated in the information?

5   A    Yes.

6   Q    With regard to these three charges, and in conjunction

7   with the plea agreement that you have entered into with the

8   government, I'm going to take each of these counts one at a

9   time and ask you some questions.

10       First of all, on the first count, the conspiracy with

11  regard to the false filing of, I should say the filing of the

12  false form 941s, are you aware that under the statute, the

13  maximum sentence that Judge Feuerstein may impose upon you is

14  five years of incarceration?

15  A    Yes.

16  Q    And do you also understand that the minimum term of

17  imprisonment under the statute for this first count is zero

18  years?

19  A    Yes.

20  Q    Do you also understand that Judge Feuerstein may impose a

21  maximum fine on this count of $250,000 or two times the gross

22  gain or gross loss, whichever is greater, pursuant to the

23  statute?

24  A    Yes.

25  Q    And do you also realize that the Court may order

1  restitution if it so directs and according to your plea

2  agreement, you and the government agree that restitution with

3  respect to your tax liabilities may be ordered by the Court?

4  A    Yes.

5  Q    Do you also understand that some of the other penalties

6  you may be facing here are deportation or removal?

7  A    Yes.

8  Q    Do you understand as well that there is a $100 special

9  assessment which you are required to pay?

10 A    Yes.

11 Q    And do you realize Mr. Pabon that if any jail time is

12 imposed here by Judge Feuerstein, a period of three years of

13 supervised release must also be imposed?

14 A    Yes.

15 Q    All right.  With respect to count 2 which is the tax

16 evasion count in conjunction with the filing of your personal

17 tax returns for 2006, do you understand that under the statute

18 the maximum sentence of incarceration which Judge Feuerstein

19 may impose is five years?

20 A    Yes.

21 Q    And do you also understand that pursuant to the statute

22 the minimum period of incarceration would be zero years?

23 A    Yes.

24 Q    Do you further understand that the maximum fine for count

25 2 which Judge Feuerstein may impose pursuant to the statute

F.  Pabon-Court                    20

1  here is $100,000?

2  A    Yes.

3  Q    And do you also realize that the Court may order

4  restitution if it so directs and that pursuant to your plea

5  agreement, you and the government agree that restitution with

6  respect to your tax liability may be ordered by the Court?

7  A    Yes.

8  Q    And do you further understand that there is a $100

9  mandatory special assessment which you are required to pay as

10  an administrative fee associated with this count?

11  A    Yes.

12  Q    And do you also understand that the, pursuant to the

13  statute, the costs of prosecution of this matter may also be

14  assessed against you?

15  A    Yes.

16  Q    And do you understand further Mr. Pabon that if any jail

17  time is imposed here by Judge Feuerstein that a period of three

18  years of supervised release must also be imposed?

19  A    Yes.

20  Q    And moving on to count 3 which is the count relating to

21  the unlawful employment of aliens who are not authorized to

22  work in the United States.  Do you understand that pursuant to

23  the statute the maximum of sentence of incarceration which

24  Judge Feuerstein may impose is six months?

25  A    Yes.

F.  Pabon-Court                    21

1  Q     And do you also understand that pursuant to the statute

2  the minimum term of imprisonment on this count is zero years?

3  A     Yes.

4  Q     The maximum fine that Judge Feuerstein can impose here is

5  $3,000 for each unauthorized alien for whom such a violation

6  occurs but you and the government are agreeing that the fine

7  shall be $150,000 payable jointly and severally with the

8  codefendants, Eduardo Pabon and Fernando Pabon, do you

9  understand that?

10 A     Yes.

11 Q     And do you also realize that there is again a $100 special

12 assessment associated as an administrative cost with this third

13 count that you are required to pay?

14 A     Yes.

15 Q     And do you also understand Mr. Pabon that if Judge

16 Feuerstein imposes jail time that a period of one year of

17 supervised release must also be imposed?

18 A     Yes.

19 Q     All right.  Fernando Pabon have you discussed the

20 sentencing guidelines with Mr. O'Connell, your counsel?

21 A     Yes.

22 Q     Based on our recent Supreme Court decision, the guideline

23 sentencing range is not mandatory, it is advisory only.  Do you

24 understand that?

25 A     Yes.

F. Pabon-Court                                  22

1  Q    In other words, Judge Feuerstein must consider the

2  sentencing guideline range but she is not compelled to sentence

3  you within that range.  Do you understand that?

4  A    Yes.

5  Q    After considering the sentencing guideline range, Judge

6  Feuerstein must consider all the other factors in your case.

7  For example, she must consider the statutory reasons for

8  sentencing.  Those include first of all the nature and

9  circumstances of the offense that you're charged with here, the

10 three of them, as well as the history and characteristics of

11 you as a defendant.

12     She must also consider the need for the sentence imposed

13 to reflect the seriousness of the offense, to promote respect

14 for the law and to provide just punishment for the offense.

15     Judge Feuerstein must also consider the need to afford

16 deterrence as to other criminal conduct.  And the need to

17 protect the public from further crimes that you might commit.

18     Once she's taken into account all these factors including

19 the sentencing guideline range and all the other circumstances

20 that I've just discussed with you, Judge Feuerstein must then

21 determine a sentence that is reasonable in these circumstances.

22 Do you understand that?

23 A    Yes.

24 Q    Do you also understand that any estimate of the guideline

25 range provided by the government is not binding on the Court?

F.  Pabon-Court                              23

1  A    Yes.

2  Q    And Fernando Pabon do you realize that if the sentence

3  imposed by Judge Feuerstein is more severe than you expected,

4  you will nonetheless be bound by your guilty plea and you will

5  not be permitted to withdraw it?

6  A    Yes.

7  Q    Fernando Pabon, do you have any questions that you would

8  like to ask me about the charges or your rights or anything

9  else relating to this matter?

10  A    No.

11  Q    Fernando Pabon, are you ready to plead?

12  A    Yes.

13       THE COURT:  Mr. O'Connell do you know of any legal

14  reason why Fernando Pabon should not plead guilty?

15       MR. O'CONNELL:  No, Your Honor.

16  Q    Fernando Pabon are you satisfied with your legal

17  representation in this matter?

18  A    Yes.

19  Q    And Mr. Pabon what is your plea to count 1 of the

20  information?

21  A    I'm guilty.

22  Q    And what is your plea to count 2 of the information?

23  A    I'm guilty.

24  Q    And what is your plea to count 3 of the information?

25  A    I'm guilty.

1  Q    Fernando Pabon, are you making the plea of guilty here

2  voluntarily and of your own free will?

3  A    Yes.

4  Q    Has anyone threatened or forced you to plead guilty?

5  A    No.

6  Q    Other than the agreement with the government which is the

7  plea agreement that we've marked as Court Exhibit 1 and as has

8  been stated on the record, has anyone made any promises that

9  caused you to plead guilty?

10  A    No.

11  Q    Has anyone made any promise to you as to what your

12  sentence will be?

13  A    No.

14  Q    Fernando Pabon did you as charged in count 1 of the

15  information file a false and fraudulent or cause false and

16  fraudulent form 941s to be filed for the three restaurants at

17  issue here and file them with the Internal Revenue Service

18  knowing that they were false and fraudulent because they failed

19  to disclose untaxed wages?

20  A    Yes.

21  Q    And as to count 2 with respect to your individual tax

22  return for the calendar year of 2006, did you file a false and

23  fraudulent tax return attempting to evade your tax

24  responsibilities by understating your income as well as the tax

25  owed on that income?

F. Pabon-Court                     25

1  A    Yes.

2  Q    And with respect to count 3 did you knowingly and

3  willingly along with your brothers hire illegal aliens to work

4  at the restaurants knowing full well that these individuals

5  were not authorized to work in the United States?

6  A    Yes.

7  Q    Fernando Pabon I will ask you now please to describe in

8  your own words what you did in connection with the acts charged

9  in counts 1, 2 and 3 of the information.

10  A    About July 31, 2006 I Fernando Pabon and Eduardo Pabon and

11  Juan Carlos Pabon caused to be filed of a false form 941 for

12  FRC which reported that between April 1, 2006 and June 30, 2006

13  for $68,363 in wages were paid to Finitia Restaurant

14  Corporation that were subject to payroll taxes when in fact as

15  I didn't under believe the total wage earning by FRC employees

16  that were subject to payroll taxes during the time period was

17  $211,854.

18  Q    And when you conspired with your brothers to perform these

19  acts, did you know at that time that you were violating the

20  laws of the United States?

21  A    Yes.

22          THE COURT:  Mr. Kelly is there anything else?

23          MR. KELLY:  And this was in connection with the Mi

24  Tierrita Restaurants that you and your brothers operated in

25  Nassau and Suffolk Counties, correct?

F. Pabon-Court                          26

1            MR. F. PABON:  Yes.

2            MR. KELLY:  And to operate these restaurants you used

3  in part a cash payroll to evade payroll taxes, correct?

4            MR. F. PABON:  Yes.

5            MR. KELLY:  Thank you Judge.

6            THE COURT:  All right.  Let's move on to count 2.

7  BY THE COURT:

8  A    For the tax year 2006 I knowingly declared income of

9  $41,682 and paid federal income tax of $5,496 when I knew the

10 proper income amount was $304,343 and the proper federal income

11 tax amount was $80,415.  I received cash income and failed to

12 declare it in order to evade taxation.

13 Q    All right.  And where were you living at the time that you

14 filed this false tax return?

15 A    Holtsville.

16 Q    All right. And at the time that you completed and filed

17 this false tax return you understood at that time, did you not,

18 that you were violating the laws of the United States?

19 A    Yes.

20 Q    All right.

21           THE COURT:  Anything else Mr. Kelly?

22           MR. KELLY:  No, Your Honor, thank you.

23           THE COURT:  All right, let's move on to count 3.

24 A    From 2003 to 2008 in Nassau and Suffolk County I knowingly

25 employed individuals at the Mi Tierrita Restaurant that were

1  not authorized to work in the United States.  And I worked to

2  get some of them their working papers.  I knew they were not

3  authorized to work in the United States.

4  Q    All right.  And you did this hiring knowingly and

5  intentionally along with your two brothers, is that correct?

6  A    Yes.

7  Q    And these individuals you hired were to work in the

8  restaurants that were located in Nassau and Suffolk Counties,

9  correct?

10  A    Yes.

11  Q    And at the time you hired these individuals you knew that

12  they were not authorized to work in the United States, correct?

13  A    Yes.

14  Q    And so you also knew at that point that you were violating

15  the laws of the United States when you did so, is that correct?

16  A    Yes.

17  Q    All right.

18          THE COURT:  Anything further Mr. Kelly?

19          MR. KELLY:  These hirings were part of a pattern and

20  practice that you carried out together with your brothers at

21  the Mi Tierrita restaurants, correct?

22          MR. F. PABON:  Yes.

23          MR. KELLY:  Nothing further.  Thank you Judge.

24          THE COURT:  All right.  Mr. Kelly if you would

25  please, I'm going to ask you to outline the government's proof

1  of this were it to go to trial.

2          MR. KELLY:  Using the, on count 1, the payroll tax

3  evasion, we would use the actual filings that were made and

4  signed by the defendant, Fernando Pabon or one Carlos Pabon or

5  Eduardo Pabon.  We would provide documents to show the cash

6  receipts of the business and we would show the cash payroll of

7  the business.  And show the contrast between the actual cash

8  payroll of the Mi Tierrita Restaurants and what was reported to

9  the IRS on the form 941s.  And we would show this through the

10 documents that we've obtained in this case as well as the

11 filings with the IRS.

12         As for the income tax evasion we would use as

13 evidence the federal income tax return filed by the defendant

14 Fernando Pabon and we would use the cash receipts records of

15 the business and the testimony of individuals to demonstrate

16 that he had received not in 2006, 41,000 approximately as he

17 reported, but in excess of $300,000 income.  And that his

18 federal income tax amount was not approximately 5,000 as he

19 said on his income tax return, but over $80,000.

20         As for count 3, unlawful employment of aliens, we

21 would show that a significant number of the employees of the Mi

22 Tierrita restaurants had, were not authorized to work in the

23 United States.  They had no status in the United States.  They

24 utilized false social security numbers.  And the defendants,

25 defendant Fernando Pabon together with his brothers Juan Carlos

Colloquy                                    29

1   and Eduardo Pabon for the employees who had worked there for a

2   while and were doing good work, would actually seek status and

3   working papers for them which the government used as further

4   evidence of their knowledge that these individuals were not

5   authorized to work in the United States.

6           And we would show those by the records of employee

7   and records of the cash payroll and the immigration

8   authorizations that were sought after some employees, for some

9   employees after they had worked there for a significant period

10  of time and were doing well.

11          So it would be a combination of documents and live

12  testimony that the government would use to prove each of the

13  three counts against Mr. Fernando Pabon.

14          THE COURT:  Thank you.  I had noted earlier in this

15  proceeding that I had a waiver of indictment form filled out by

16  the defendant and his counsel.

17          I neglected to state that I have also executed that

18  document and that also now becomes part of the record here.

19          Based upon all the information that's been presented

20  to me here, I find that the defendant Fernando Pabon is acting

21  voluntarily.  That he fully understands his rights and the

22  consequences of his plea.  And that there is indeed a factual

23  basis for the plea.

24          I am therefore recommending to Judge Feuerstein that

25  she accept the plea of guilty to counts 1, 2 and 3 of the

Colloquy                                30

1   information.

2           Now, what is the government's position with respect

3   to the issue of bail for Fernando Pabon?

4           MR. KELLY:  The government had recommended that the

5   Court approve a secured bond of $200,000 secured by both Mr.

6   Pabons' marital residence and the surety had been signed, has

7   been signed by his wife who's a co-owner of the home.  In

8   addition, the government had the property at 205 McCormick

9   Drive, Bohemia, New York put up as security for the $200,000

10  bond because that is owned partially by Mr. Fernando Pabon.  I

11  believe it's about 15 percent is owned by Fernando Pabon. The

12  rest is owned by Juan Carlos Pabon and Eduardo Pabon who have

13  also signed the $200,000 bond for Fernando Pabon so that that

14  property in its entirety also secures the bail of Mr. Fernando

15  Pabon.

16          And together with the conditions that are indicated

17  on the bail sheet that has been signed by the defendant

18  Fernando Pabon, his spouse as well as Juan Carlos and Eduardo

19  Pabon, the government recommends that that bail which I believe

20  has been consented to by defendant, be sufficient for Fernando

21  Pabon who has less assets and less of an interest in the, less

22  of a financial interest in the restaurants.

23          THE COURT:  All right.  Mr. O'Connell you want to be

24  heard.

25          MR. O'CONNELL:  I would join in the government's

Colloquy                                    31

1  application.  I've reviewed it with my client, his wife and his

2  brothers and they've agreed to that subject to your approval

3  and signed the document.

4          THE COURT:  All right.  It appears to me from my

5  review of the pretrial services report that Fernando Pabon's

6  income is considerably less on a yearly basis than the other

7  two brothers.

8          Let's see -- Miriam Pabon, is she here?  Would you

9  step up ma'am.

10          MR. O'CONNELL:  Can she sit here and the interpreter

11  can interpret for both?

12          THE COURT:  Yes.  Mrs. Pabon, I believe you've been

13  sitting here for most of the proceedings today including those

14  involving Juan Carlos Pabon, is that correct?

15          MRS. PABON:  Yes.

16          THE COURT:  And you have been asked to serve as a

17  suretor here on the bond to secure the release of your husband

18  on bail until such time as these charges are disposed of, is

19  that correct?

20          MRS. PABON: Yes.

21          THE COURT:  It appears to me from the bond document

22  that you are cosigning here as an owner of the residence at 114

23  Seventh Avenue in Holtsville, correct?

24          MRS. PABON: Yes.

25          THE COURT:  And just a couple of questions that I

1  need to ask you.  First of all, this is a very serious matter

2  which I'm sure you fully understand at this point.

3          MRS. PABON: Yes, I do.

4          THE COURT: And that there is a risk involved here

5  directly to you in your capacity as a suretor for this bond.

6  And specifically, the purpose of this bond is to insure that

7  Fernando Pabon comes back to Court each and every time he's

8  directed to do so by the Court until such time as this matter

9  is fully disposed of.  Do you understand that?

10          MRS. PABON: Yes.

11          THE COURT: And if for any reason Mr. Pabon did not

12  return on an assigned date from the Court, then the government

13  would have the right to foreclose on this bond and to come

14  after you personally for the amount of money that the bond is

15  issued in and here it's $200,000.  So you are literally at risk

16  for that amount of money.  Do you understand that?

17          MRS. PABON: Yes.

18          THE COURT: And the government would have the right to

19  take whatever action was necessary to obtain the $200,000 or

20  its equivalent if for any reason your husband did not return to

21  Court as directed.  And that means for example -- are you

22  employed now?

23          MRS. PABON: No.

24          THE COURT: Okay.  Well, the government has a right to

25  bring a suit against you for example to collect that money even

1  if you're not working if you have any other assets.  And I need

2  to know that you understand that the government does have that

3  right and that you are at risk for that sum of money.  Do you

4  understand that?

5          MRS. PABON: Yes.

6          THE COURT: And knowing what the risk is here, are you

7  nonetheless agreeing to sign on to this bond as a suretor to

8  make sure that Mr. Pabon comes back here for each and every one

9  of his court appearances?

10          MRS. PABON: Yes.

11          THE COURT: And is this your signature on the bond?

12          MRS. PABON: Yes, that's my sign.

13          THE COURT: Okay, thank you Mrs. Pabon.  You can step

14  back now.

15          MRS. PABON: May I ask a question?

16          THE COURT: Yes.

17          MRS. PABON: What would happen if my husband should

18  get sick and cannot appear?

19          THE COURT: Well, certainly if that were to be the

20  case, Mr. O'Connell as his counsel would bring that to the

21  Court's attention and to the government's attention.  And if he

22  is truly ill, obviously his appearance for that particular day

23  might be excused.  But he might be asked to provide some

24  medical documentation to confirm that.

25          MRS. PABON: Okay, thank you.

Colloquy                    34

1          THE COURT: But I'm sure that Mr. O'Connell will

2    handle that.

3          MRS. PABON:  Okay, thank you so much.

4          THE COURT:  All right.  Thank you ma'am.  I know that

5    Eduardo Pabon and Juan Carlos Pabon are in the courtroom.  I

6    just want them to stand for a moment.  You understand I have

7    explained these conditions on two occasions now.  I know you

8    both heard them.

9          But since you are signing on to these bonds are

10   suretors, I want you to acknowledge that you understand the

11   risk that's being undertaken here and also what your

12   responsibility is should for any reason Fernando Pabon not

13   return to Court when he's supposed to.  You can be held liable

14   for those, for the full amount of the bond?  Do you understand

15   that?

16         Let me ask, confirm, Juan Carlos Pabon, do you

17   understand that?  And you're undertaking the risk regardless of

18   that fact?

19         MR. J.C. PABON: (No audible response).

20         THE COURT:  And Eduardo Pabon, you understand what

21   the risk is?

22         MR. E. PABON: (No audible response).

23         THE COURT:  And are you willing to undertake that

24   risk, understanding all of the things that I've just outlined

25   to Miriam Pabon?

Colloquy                              35

1            MR. E. PABON:  (No audible response).

2            THE COURT:  All right.  The record will reflect that

3    both gentlemen have verbally agreed yes, they do understand the

4    risk.  And they nonetheless are willing to undertake such risk.

5            All right, I'm going to go ahead and sign the bond.

6            Fernando Pabon you are being released on a secured

7    appearance bond.  The bond is being secured by the property

8    which is your residence in addition to property listed at 167

9    Sixth Avenue in Holtsville and at 31 Summerfield Drive in

10   Holtsville, at 205 McCormick Drive in Bohemia.  And I think

11   that's all of the properties, correct?

12           MR. KELLY:  Yes.

13           MR. O'CONNELL:  Yes, Your Honor.

14           THE COURT:  All right.  Fernando Pabon I'm also

15   directing that you must remain in and you may not leave the

16   eastern and southern district of New York and Connecticut.

17   Just so I understand, Connecticut as added here because?

18           MR. KELLY:  Because the defendant's daughter is

19   expected to give birth in the near future and she lives in

20   Connecticut so that he could go up there.

21           THE COURT:  All right.  Very well then.  So you

22   understand Mr. Pabon that your travels are limited to the

23   eastern and southern districts of New York as well as the State

24   of Connecticut.  Do you understand?

25           MR. F. PABON:  Yes.

1          THE COURT:  You may not travel outside that area

2  without the prior permission of the Court.  Do you understand

3  that?

4          MR. F. PABON:  Yes.

5          THE COURT:  In addition, I am directing you to

6  surrender any and all passports that you have to the pretrial

7  services agency no later than April 24th.  And I am directing

8  you not to apply for any further passports.  Do you understand

9  that?

10          MR. F. PABON:  Yes.

11          THE COURT:  I'm also placing you under the express

12  supervision of the pretrial services agency.  You are to

13  report to that agency once per month in person and once per

14  week by telephone.  Do you understand that?

15          MR. F. PABON: Yes.

16          THE COURT:  And I have outlined to you now all of the

17  conditions of your release.  Do you agree to abide by those

18  conditions?

19          MR. F. PABON: Yes.

20          THE COURT:  All right.  As I've indicated, I've now

21  signed the bond and the conditions of release.  Is there

22  anything further from the government?

23          MR. KELLY:  No, Your Honor, thank you.

24          THE COURT:  Anything further from the defendant Mr.

25  O'Connell?

1          MR. O'CONNELL:  No, Your Honor.

2          THE COURT:  All right.  Then this matter is

3  concluded.

4                    *          *          *

5                    <u>CERTIFICATION</u>

6          I, TRACY GRIBBEN, a Certified Electronic Transcriber

7  do hereby certify that the foregoing transcript of proceedings

8  is a true and accurate transcript of the telephonic motion as

9  recorded in the matter of United States of America versus

10  Fernando Pabon, heard by the U.S. District Court on April 10,

11  2009 1:19 p.m. to 2:16 p.m.

12

13  _____          Date:_____

14  TRACY GRIBBEN

15

16  TERRY GRIBBEN'S TRANSCRIPTION SERVICE

17

18

19

20

21

22

23

24

25